**WONG WING HANG, Petitioner,**

**v.**

**IMMIGRATION AND NATURALIZA-TION SERVICE, Respondent.**

No. 116, Docket 29335.

United States Court of Appeals
Second Circuit.

Argued Dec. 6, 1965.

Decided March 28, 1966.

Benjamin Gim, New York City, for petitioner.

Francis J. Lyons, New York City, (Robert M. Morgenthau, U. S. Atty., for the Southern District of New York; James, G. Greilsheimer, Special Asst. U. S. Atty., of Counsel), for respondent.

Before LUMBARD, Chief Judge, and FRIENDLY and SMITH, Circuit Judges.

FRIENDLY, Circuit Judge:

Wong Wing Hang asks us to set aside a final order of the Board of Immigration Appeals insofar as this denied, as a matter of discretion, his application under the Immigration and Nationality Act § 244, 8 U.S.C. § 1254(a) (1), for suspension of a concededly valid order directing his deportation to Formosa.

The petitioner, a 37-year old native and citizen of China, entered the United States in 1951 on a false claim that he was the son of a United States citizen. Two years later he fraudulently applied for a certificate of citizenship, and in December 1955, when questioned by a United States attorney, gave false information as to his identity and that of other Chinese immigrants. Shortly thereafter he furnished the correct information when called before a grand jury, and subsequently revealed his identity to the INS and surrendered his certificate. In 1956 he was indicted as a member of a conspiracy to perpetrate passport frauds for other Chinese, the last overt act being the giving of false testimony in court on December 12, 1955; he was convicted on a plea of guilty in 1961, and, receiving a suspended sentence, was placed on probation for a year.

In September 1963, the INS held proceedings to determine whether Wong should be deported for having entered the United States without inspection, § 241(a) (2). Not disputing deportability, Wong applied for suspension. A hearing before a Special Inquiry Officer revealed that during the course of his probation Wong told his probation officer that his wife was in China and afterwards, in August 1962, when asked by an investigator of the INS where his wife and children were and whether they had ever entered the United States, stated under oath that they had never entered this country and were living in Kowloon; in fact, as Wong well knew, the wife and children had fraudulently entered Canada in 1958 as the spouse and children of a Canadian citizen and at the time of the statement to the investigator were visiting Wong in New York. The Special Inquiry Officer, after questioning Wong closely as to the extent of his wife's visits and whether she was spending most of the time here, reserved decision pending report of a character investigation being conducted by the Government. The following December, in the course of the investigation, the wife was found in Wong's apartment, having entered the United States two months before as a Canadian citizen saying she wanted to remain for three weeks or a month.

Section 244(a) (1) of the Immigration and Nationality Act provides in pertinent part as follows:

"As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent res-

idence, in the case of an alien who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence."

It is undisputed that Wong is deportable for his illegal entry into the United States under a provision not specified in paragraph (2); that he was physically present in this country for a continuous period of not less than seven years before he applied for suspension of deportation at his hearing in 1963; and that deportation would result in extreme hardship. Moreover, the Special Inquiry Officer and the Board of Immigration Appeals found that Wong's misconduct during the seven year period was insufficient to condemn him as lacking "good moral character" in the sense of § 101(f). Wong's application for suspension was denied not for ineligibility but because, in the language of the Special Inquiry Officer, "far from acting as a person who regretted his previous actions and was attempting to act in a law abiding fashion," Wong had "deliberately concealed the whereabouts and status of his wife and children" and had permitted his wife to enter the United States repeatedly with documents known to him to be fraudulent and to remain beyond the period of her admission. Wong complains that he is being penalized for protecting his wife and children as any husband and father would.

■ Disposition of the petition requires analysis of the scope of review of orders denying suspension of deportation. There is no reason to doubt that administrative findings of fact made in determining an alien's eligibility for suspension must meet the statutory test of support by "reasonable, substantial, and probative evidence on the record considered as a whole," § 106(a)(4), see Foti v. Immigration and Naturalization Service, 375 U.S. 217, 228–229 & n. 15, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), or that a determination of ineligibility is subject to judicial scrutiny for proper application of the conditions prescribed in § 244. See Dessalernos v. Savoretti, 356 U.S. 269, 78 S.Ct. 690, 2 L.Ed.2d 751 (1958); Wadman v. Immigration and Naturalization Service, 329 F.2d 812 (9 Cir. 1964); Gagliano v. Immigration and Naturalization Service, 353 F.2d 922 (2 Cir. 1965). We can narrow the problem further by accepting that factual findings on which a discretionary denial of suspension is predicated must pass the substantial evidence test. The issue concerns the standard to be applied in reviewing an ultimate refusal to exercise discretion in favor of an eligible alien when the facts are undisputed or have been properly found.

■ Since the review provisions of § 106 of the Immigration and Nationality Act do not answer this question, we turn for illumination to § 10 of the Administrative Procedure Act, a course particularly appropriate in light of the expressed congressional purpose to fashion in § 106 a statutory procedure of review that "implements and applies" § 10 of the APA, H.R.Rep. No. 1086, 1961 U.S. Code Cong. & Ad. News 2950, 2966. Here we encounter the familiar conflict between the preamble of § 10, "Except so far as * * * agency action is by law committed to agency discretion," and the command of subsection (e) that the reviewing court shall "set aside agency action * * * found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." See Cappadora v. Celebrezze, 356 F.2d

1, 5 (2 Cir. 1966); 4 Davis, Administrative Law Treatise §§ 28.08, 28.16 (1958) (and 1965 pocket part); Berger, Administrative Arbitrariness and Judicial Review, 65 Colum.L.Rev. 55 (1965); and Mr. Berger's forthcoming article, Administrative Arbitrariness—A Reply to Professor Davis, 114 U.Pa.L.Rev. 783 (1966). Some help in resolving the seeming contradiction may be afforded by the distinction drawn by Professors Hart and Sacks between a discretion that "is not subject to the restraint of the obligation of reasoned decision and hence of reasoned elaboration of a fabric of doctrine governing successive decisions" and discretion of the contrary and more usual sort, see The Legal Process 172, 175–177 (Tent. ed. 1958); only in the rare—some say non-existent—case where discretion of the former type has been vested, may review for "abuse" be precluded. An argument could be made that the change from the earlier versions of the suspension provision, "the Attorney General may suspend if he finds," 54 Stat. 672 (1940), 62 Stat. 1206 (1948), to its present form affords an indication that Congress meant to accord the Attorney General or his delegate *ad hoc* discretion of that sort. But the Attorney General himself has not thought so; applications for suspension of deportation, whether under § 244 or § 243(h) of the Immigration and Nationality Act, have long been subjected to various administrative hearing and appeal procedures, see the history recounted in Jay v. Boyd, 351 U.S. 345, 351–352, 76 S.Ct. 919, 100 L.Ed. 1242 (1956), with their concomitants of "the obligation of reasoned decision." Despite language in Jay v. Boyd, supra at 353–356, 76 S.Ct. 919, that could be read as supporting unreviewability of the ultimate exercise of discretion, the contrary view is implicit in United States ex rel. Hintopoulos v. Shaughnessy, 353 U.S. 72, 77, 77 S.Ct. 618, 1 L.Ed.2d 652 (1957), where the Court reviewed the discretionary denial of suspension and affirmed the agency decision because it did not represent an abuse of discretion and the reasons on which it was based were neither "capricious nor arbitrary." And in Foti v. Immigration and Naturalization Service, 375 U.S. 217, 228–229, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963), judicial review of discretionary denials was assumed, the Supreme Court declaring only that a court of appeals was limited to determining whether the decision had been based on arbitrariness or abuse of discretion. This court has long held discretionary denials of suspension to be reviewable for "abuse." See United States ex rel. Kaloudis v. Shaughnessy, 180 F.2d 489, 491 (2 Cir. 1950); United States ex rel. Adel v. Shaughnessy, 183 F.2d 371, 372 (2 Cir. 1950); Mastrapasqua v. Shaughnessy, 180 F.2d 999, 1002 (2 Cir. 1950).

What is not so clear is precisely what this means. In the absence of standards in the statute itself, proper administration would be advanced and reviewing courts would be assisted if the Attorney General or his delegate, without attempting to be exhaustive in an area inherently insusceptible of such treatment, were to outline certain bases deemed to warrant the affirmative exercise of discretion and other grounds generally militating against it. When we turn to the books, we find that "abuse of discretion" has been given two rather different meanings. In one version it appears as a sort of "clearly erroneous" concept, perhaps best expressed in Judge Magruder's formulation that "when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors." In re Josephson, 218 F.2d 174, 182 (1 Cir. 1954). See Pearson v. Dennison, 353 F.2d 24, 28 & n. 6 (9 Cir. 1965). Under a more limited notion discretion is held to be abused only when the action "is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view" under discussion. See Delno v. Market St. Ry. Co., 124 F.2d 965, 967 (9 Cir. 1942). A narrower meaning seems more appropri-

ate when a court is reviewing the exercise of discretion by an administrative agency or an executive officer as distinguished from hearing an appeal from a decision of a judge—particularly so when the relevant statute expressly confides "discretion" to the agency or officer; this assists in reconciling what conflict there is in § 10 of the APA. Without essaying comprehensive definition, we think the denial of suspension to an eligible alien would be an abuse of discretion if it were made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group, or, in Judge Learned Hand's words, on other "considerations that Congress could not have intended to make relevant." United States ex rel. Kaloudis v. Shaughnessy, supra, 180 F.2d at 491.

Wong contends that the determination here comes under the first rubric since it is internally inconsistent—he was found to have possessed "good moral character" during the several years prior to his application for discretionary relief, yet was faulted for prevarication and concealment during that same period. But the answer lies in the very point so strongly pressed by him, that his falsehoods were prompted by the natural human motive to protect his wife and children and keep his family together. To say that such conduct does not demonstrate lack of good moral character but nevertheless may not demand a favorable exercise of discretion by the Immigration Service is by no means a self-contradiction. If the immigration authorities choose to say that a man who has gained entry by a false claim of United States citizenship and has cooperated with others in similar efforts, can win their favor only by a spotless record in later dealings with them, and apply this standard with an even hand, we cannot hold their decision to be so wanting in rationality as to be an abuse of the discretion which Congress vested in them.

The petition to review must therefore be denied.