**Phillip Terrance MOORE, Petitioner,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent.**

**No. 82–1949.**

United States Court of Appeals,
First Circuit.

Argued June 7, 1983.
Decided Aug. 18, 1983.

James P. Duggan, Boston, Mass., with whom William A. Brown, and Brown & Prince, Boston, Mass., were on brief, for petitioner.

James A. Hunolt, Atty., Dept. of Justice, Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Civ. Div., and Charles E. Hamilton, III, Atty., Dept. of Justice, Washington, D.C., were on brief, for respondent.

Before CAMPBELL, Chief Judge, McGOWAN,* Senior Circuit Judge, and SELYA,** District Judge.

PER CURIAM:

We review here the Immigration and Naturalization Service ("INS") Board of Immigration Appeals' denial of appellant Phillip Moore's second application to reopen his deportation proceeding. Because we believe the Board did not abuse its discretion in this matter, we affirm.

I

Phillip Moore is a citizen of Trinidad. In September of 1972, he entered the United States at Puerto Rico as a nonimmigrant visitor with a 15-day visa. He took a job, however, and worked there for two years. In 1974, he moved to Boston, Massachusetts, and began working in the job he now holds. He apparently lived in Boston with his wife and three children until his wife was deported in July, 1979. His children apparently are still living in the United States.

In April, 1979, the INS served Moore with an Order to Show Cause, charging that he was deportable for overstaying his visa. Appearing before an immigration judge ("IJ"), he admitted deportability and re-

quested six months in which to leave voluntarily. The IJ then ordered him to leave by November 3, 1979. Instead of preparing to depart, Moore used this time to collect evidence demonstrating that he would suffer extreme hardship if he were deported. In October, 1979, barely seven years after he first entered the United States, Moore filed a motion to reopen his deportation proceeding to apply for a suspension of deportation. He argued that he was eligible for relief under 8 U.S.C. § 1254(a)(1) (1976 & Supp. V 1981) ("section 1254(a)(1)"). That section provides in part:

As hereinafter prescribed in this section, the Attorney General may, in his discretion, suspend deportation and adjust the status to that of an alien lawfully admitted for permanent residence, in the case of an alien (other than an alien described in section 1251(a)(19) of this title) who applies to the Attorney General for suspension of deportation and—

(1) is deportable under any law of the United States except the provisions specified in paragraph (2) of this subsection; has been physically present in the United States for a continuous period of not less than seven years immediately preceding the date of such application, and proves that during all of such period he was and is a person of good moral character; and is a person whose deportation would, in the opinion of the Attorney General, result in extreme hardship to the alien or to his spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence . . . .

Moore argued that he met the four requirements for a section 1254(a)(1) suspension: (1) deportability; (2) physical presence in the United States for seven years; (3) good moral character; and (4) extreme hardship if deported. Moore claimed that deportation would cause him extreme hardship because he had become accustomed to the

---

* Of the District of Columbia Circuit, sitting by designation.

** Of the District of Rhode Island, sitting by designation.

American way of life and could not readjust to life in Trinidad, and because he would lose his job and credit rating. He claimed that he would be unable to find work in Trinidad; consequently, he would be unable to support and educate his children. He also alleged that he personally would lose educational opportunities. He alleged generally that, if he were deported, he would suffer a deterioration of his health, become dependent on relatives and neighbors, and suffer mental depression. Lastly, he alleged that, if he were deported, his son Roger, who was living with him in the United States, would have to return with him. Roger, Moore alleged, would be unable to adjust to life in Trinidad and would lose the educational opportunities of the United States. *See* Record at 162–63.

In September, 1980, an IJ concluded that Moore had not established a prima facie case of extreme hardship and denied his motion to reopen without a hearing. The IJ noted that Moore's family were all citizens of Trinidad, and that his own submissions established that his wife and two other children were living there. Deportation, the IJ observed, would in fact enable him to keep his family together. The IJ also found that economic detriment alone is not enough to establish extreme hardship, and that losing one's job because of deportation did not constitute extreme hardship within the meaning of the statute. Moore appealed the IJ's decision to the Board of Immigration Appeals (the "Board"), but it dismissed the appeal in December, 1980. Moore did not appeal the Board's decision.[1]

Instead, in March, 1981, he filed with the Board a second motion. By this motion, he sought, on the basis of allegedly newly-discovered evidence, to reopen his deportation proceeding or, in the alternative, to obtain reconsideration of the dismissal of his prior appeal. The "new" evidence consisted of an allegation that in July, 1979, his wife

left Massachusetts for New York on her way to Trinidad with the three children. Instead of taking the children with her to Trinidad, however, she allegedly left them in New York with her paramour's family. Since his children were in the United States, Moore alleged, his deportation would cause them extreme hardship because they would have to return with him. Moore also submitted two letters from psychologists, one of whom stated that Moore needed psychological therapy for "a depressive reaction . . . relatively long in standing, growing over the past four years in response to his wife's sexual promiscuity and his attempts to keep his family together." Record at 43. The other psychologist stated that Moore's two sons needed psychological therapy and special education. The psychologists doubted whether the requisite therapy would be available in Trinidad. Additionally, one psychologist found that Moore's "prognosis without therapy is guarded to poor." Record at 44.

In August, 1982, the Board, without a hearing, denied Moore's motion to reconsider, affirming its prior determination that Moore had failed to make a prima facie showing of extreme hardship. The Board found nothing unusual about Moore's depression caused by leaving a country where he had lived illegally for ten years. It also observed that Moore had used the six months it gave him for voluntary departure merely to gather documentation to contest his deportation, and concluded that Moore's adverse immigration history far outweighed the slim equities in his favor. The Board also found that the evidence regarding the children did not reveal any unusual facts. Moore now appeals the Board's second denial of his motion to reopen.

## II

■ We must determine whether the Board's denial of Moore's second motion to

---

1. The Board stated that Moore presumably was eligible for a "sixth preference" visa under 8 U.S.C. § 1153(a)(6) (Supp. V 1981). Moore now contends the Board erred in believing the availability of this visa would prevent the hardship of deportation since, as a practical matter, he would be unable to obtain one because of

the high demand for them. Moore did not appeal the denial of his first motion to reopen and the Board did not rely on the sixth preference visa ground in denying his second motion to reopen. Consequently, this issue is not before us.

reopen the deportation proceeding to consider suspending his deportation was an abuse of discretion. *Bonsukan v. INS,* 554 F.2d 2, 4 (1st Cir.), *cert. denied,* 434 U.S. 833, 98 S.Ct. 118, 54 L.Ed.2d 93 (1977); *see Vaughn v. INS,* 643 F.2d 35, 37 (1st Cir. 1981). The parties agree that the dispute centers on whether, as a matter of law, Moore has established a prima facie case of "extreme hardship" under the statute, the definition of which is committed to the Attorney General and his delegates. *See INS v. Jong Ha Wang,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam).[2] The issue is whether the Board abused its discretion by concluding that Moore did not sustain his burden.

Moore's situation is strikingly similar to the respondents' situation in *Wang,* and he makes no attempt to distinguish it. In *Wang,* the INS found the respondents, citizens of Korea, to be deportable. On their second motion to reopen, which was made to the Board, they sought to suspend deportation pursuant to section 1254(a)(1). They claimed extreme hardship resulting from deportation because their American-born children would lose educational opportunities and would have difficulty adjusting to life in Korea because they did not speak Korean. The Wangs also alleged they would be harmed economically. The Board, however, concluded their showing did not constitute extreme hardship. In particular, the Board reaffirmed its long-standing policy that economic detriment could not

amount to extreme hardship. It denied the motion to reopen without a hearing. The United States Court of Appeals for the Ninth Circuit reversed, holding that the Wangs had alleged a prima facie showing of extreme hardship. Consequently, the Board was required to remand to an IJ for a hearing to determine if the Wangs met the requirements of section 1254(a)(1). *Jong Ha Wang v. INS,* 622 F.2d 1341 (9th Cir.1980) (en banc), *rev'd,* 450 U.S. 139, 101 S.Ct. 1027, 67 L.Ed.2d 123 (1981) (per curiam).

The Supreme Court reversed the court of appeals for two reasons. First, the Wangs' allegations of hardship had been conclusory and unsupported by affidavit. Second, and more importantly, the court of appeals "encroached on the authority which the Act confers on the Attorney General and his delegates." 450 U.S. at 144, 101 S.Ct. at 1031. "The Attorney General and his delegates have the authority to construe 'extreme hardship' narrowly should they deem it wise to do so." *Id.* at 145, 101 S.Ct. at 1031. The Court thus affirmed the Board's decision that a prima facie case was not shown. *Id.* at 146, 101 S.Ct. at 1032.

■ Moore claims the same basic economic detriments that the respondents in *Wang* claimed: loss of job, home, and other assets. Likewise, he claims his deportation will cause his children to lose educational opportunities and that they will have diffi-

---

**2.** Moore seems to argue that, without a hearing, the Board can decide only whether he has established a prima facie case of eligibility under section 1254(a)(1); if he established a prima facie case, the Board can actually decide his eligibility only after a hearing. Brief for Appellant at 13. We disagree. Even if an alien meets the requirements of section 1254(a)(1), the Board, in the exercise of its discretion, can deny the motion to reopen without a hearing. *See INS v. Jong Ha Wang,* 450 U.S. 139, 143 n. 5, 101 S.Ct. 1027, 1030 n. 5, 67 L.Ed.2d 123 (1981) (per curiam); *Agustin v. INS,* 700 F.2d 564, 566 (9th Cir.1983); *Ramos v. INS,* 695 F.2d 181, 184 (5th Cir.1983); *Balani v. INS,* 669 F.2d 1157, 1161 (6th Cir.1982). The *Ramos* court stated:

An alien who meets [section 1254(a)(1)'s] requirements is merely eligible for suspension

of deportation, and is in no way entitled to such relief. *Faddah v. INS,* 580 F.2d 132, 133 (5th Cir.1978). Thus, even where all the requirements are met, suspension of deportation may be denied in the exercise of discretion. *Vaughn v. INS,* 643 F.2d 35, 37 (1st Cir.1981). The decision whether to suspend the deportation of an alien who satisfies the three statutory requirements is therefore discretionary, and is subject only to a most restricted judicial review. *Foti v. INS,* 375 U.S. 217, 228, 84 S.Ct. 306, 313, 11 L.Ed.2d 281 (1963).

695 F.2d at 184–85. We decide this day that, without addressing the issue of statutory eligibility, the Board may exercise its discretion to deny a motion to reopen to apply for section 1254(a)(1) suspension. *Leblanc v. INS,* 715 F.2d 685 (1st Cir.1983).

culty adjusting to life in Trinidad.[3] In addition, however, Moore claims deportation would deprive him of the psychological therapy he needs. Thus, we must decide if this additional factor requires the Board to have concluded that Moore's deportation would cause him extreme hardship.

Based on this record, we cannot conclude that the Board abused its discretion in denying Moore's second motion to reopen despite the additional factor not present in *Wang*. As we understand Moore's argument, two factors have caused his depression: his seeming inability to keep his family together, and his wife's sexual infidelity. If Moore is genuinely interested in keeping his family physically together, deportation would not hinder this objective because they would be united in Trinidad. Moreover, while the discovery of Mrs. Moore's sexual infidelity no doubt upset Moore, we cannot say that, based on the record, the Board abused its discretion in refusing to allow Moore to remain in this country for counselling. *See Gomez-Gomez v. INS*, 681 F.2d 1347 (11th Cir.1982) (Board did not abuse its discretion in denying motion to reopen despite alien's proffer of psychological reports stating she would suffer extreme emotional problems if deported to Colombia), *cert. denied,* —— U.S. ——, 103 S.Ct. 1437, 75 L.Ed.2d 795 (1983). Accordingly, we affirm the Board's decision.

*So ordered.*

---

3. Unlike the Wangs' children, who were American-born, Moore's children were born in Trinidad and apparently are not permanent residents of the United States. Thus, the hardship caused them by Moore's deportation is entitled to little if any consideration. *See* 8 U.S.C. § 1254(a)(1) (1976 & Supp. V 1981) (suspen-

sion available only if deportation would result in extreme hardship "to the alien or to his spouse, parent, or child, who is a *citizen of the United States* or an alien *lawfully admitted for permanent residence*" (emphasis added)). *See also Carnalla-Munoz v. INS*, 627 F.2d 1004, 1006 (9th Cir.1980).