**In the Matter of Ibrahim ODEH, Petitioner.**

No. 84 C 2761.

United States District Court, N.D. Illinois, E.D.

Oct. 1, 1984.

James R. Fennerty, Susan R. Gzesh, James R. Fujimoto, John H. Alexander, Chicago, Ill., for petitioner.

Jack Penca, Asst. U.S. Atty., Chicago, Ill., on behalf of government.

## MEMORANDUM AND ORDER

MORAN, District Judge.

Before the court is respondent's motion to deny the present writ of habeas corpus. Also before the court is petitioner's motion to consolidate his habeas corpus action with the civil action he subsequently filed raising, he claims, similar issues.

The administrative record and the pleadings of the habeas action reveal the following. Petitioner Ibrahim Odeh was born in Jerusalem in 1951 and is a citizen of Jordan. He entered the United States in March 1970 as a non-immigrant student. He was granted extensions of his student status until March 10, 1973. An order to show cause was issued in Chicago to determine whether petitioner could remain in this country, and petitioner was found deportable on May 7, 1975. The withholding of his deportation for fear of racial, religious or political prosecution pursuant to 8 U.S.C. § 1253(h) was denied. Petitioner was granted a voluntary departure. On November 12, 1975, petitioner's appeal of his Section 1253(h) denial was dismissed and on February 23, 1976, Odeh filed for refugee status. The District Director denied petitioner's request on May 13, 1980, and a regional commissioner affirmed that decision on August 1, 1980.

On August 7, 1980, petitioner was informed that he was to leave the United States under voluntary departure on or before September 7, 1980. In September, petitioner married Yvette Rivera, a United States citizen. He received a "bag and baggage" letter in June 1981, ordering his departure. His wife filed an I–130 petition seeking permanent resident status for her husband. Petitioner was granted a number of extensions but before the I–130 petition was adjudicated petitioner was divorced. In August 1982 petitioner received another "bag and baggage" letter requiring an October 6, 1982 departure date.

In August 1982 petitioner's attorney was informed that petitioner's file could not be found. In November 1982 petitioner divorced his wife Yvette and in December of that year married Camille, his present wife. At that time petitioner had twice been ordered to depart, the most recent order being but two months before. In December 1982 Camille filed an I–130 petition for him. Petitioner's file could not be located until January 1984. After an interview petitioner was given a "bag and baggage" letter requiring departure on March 29, 1984. On March 27, 1984, petitioner's attorney sought a stay of deportation, a motion to reopen his deportation, and a suspension of his deportation. On March 29, 1984, the District Director denied petitioner's motion for a stay in a three-page memorandum. On that same day the Board of Immigration Appeals denied petitioner's telephonic motion for a stay. Petitioner reported to the Immigration and Naturalization Service (INS) on March 29, 1984, and was taken into custody. Petitioner was released without bond on March 30, 1984. Petitioner now appeals, through this habeas action, the denial of the stay.

This court does not have jurisdiction over an order to deport. Primary jurisdiction of such an order lies with the Court of Appeals. See Immigration and Naturalization Service v. Chadha, 462 U.S. 919, 103 S.Ct. 2764, 2777–78, 77 L.Ed.2d 317 (1983). Denial of a stay, however, is not considered a final order and is not appealable to the Court of Appeals. See Diaz-Salazar v. Immigration and Naturalization Service, 700 F.2d 1156, 1159 (7th Cir.), cert. denied, — U.S. —, 103 S.Ct. 3112, 77 L.Ed.2d 1367 (1983). Thus, this court has jurisdiction to review the District Director's denial of petitioner's

motion to stay his deportation. *See Cheng Fan Kwok v. Immigration and Naturalization Service,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). These jurisdictional requirements, however, necessarily limit this court's review to only the denial of petitioner's motion to stay.

■ The regulation governing the issuance of a stay provides that the "District Director, in his discretion may grant a stay under such conditions as he may deem appropriate." 8 C.F.R. § 243.4 (1984). As a discretionary decision, the denial of a stay will not be overturned "absent a clear showing of abuse of discretion." *Kladis v. Immigration and Naturalization Service,* 343 F.2d 513, 515 (7th Cir.1965). *See Bueno v. Immigration and Naturalization Service,* 578 F.Supp. 22, 24 (N.D.Ill.1983). Some disagreement exists between the parties as to the proper standard for determining whether an abuse of discretion exists.

Petitioner seeks to have this court accept a standard devised by Judge Friendly in the Second Circuit. Judge Friendly wrote:

> [W]e think the denial of suspension to an eligible alien would be an abuse of discretion if it were made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group, or, in Judge Learned Hand's words, on other "considerations that Congress could not have intended to make relevant." *United States ex rel. Kaloudis v. Shaughnessy, supra,* [489] 180 F.2d [489] at 491 [2 Cir.1950].

*Wong Wing Hang v. Immigration and Naturalization Service,* 360 F.2d 715, 719 (2d Cir.1966). This standard has recently been referred to by a court in this district. *See Bueno v. Immigration and Naturalization Service,* 578 F.Supp. at 25. Petitioner argues that he was denied a stay because of his race, religion and national origin and because of activities protected by the First Amendment. If the court follows this standard, these charges should be considered, possibly through the extensive discovery sought by petitioner.

Respondent, however, claims that this circuit has adopted a much narrower standard. In *Joseph v. Landon,* 679 F.2d 113, 116 (7th Cir.1982), the Seventh Circuit followed the Ninth Circuit in stating:

> The abuse of discretion may be found "only if there is no evidence to support the decision or if a decision is based on an improper understanding of the law." *Song Jook Suh v. Rosenberg,* 437 F.2d 1098, 1102 (9th Cir.1971).

*Id.* In adopting this standard the court neither discussed the Second Circuit's earlier formulation nor stated whether this standard, without reference to the discriminatory factors mentioned in *Wong Wing Hang, supra,* was the only standard a reviewing court need apply. If the Ninth Circuit's formulation is followed, without reference to any other factors, the court in the first instance need not look into the motives of the Immigration and Naturalization Service.

■ This court has determined, after reviewing the case law, that the Ninth Circuit's standard, applied without any consideration of impermissible motives, is the proper standard for determining whether an abuse of discretion has occurred. In determining what standards to apply, courts have cited the long history of deference to congressional authorization of executive discretion in matters of immigration policy. *See Kleindienst v. Mandel,* 408 U.S. 753, 761–62, 92 S.Ct. 2576, 2581, 33 L.Ed.2d 683 (1972); *Bertrand v. Sava,* 684 F.2d 204, 211–12 (2d Cir.1982). In *Mandel,* after reviewing the history of congressional regulation of immigration, and the judiciary's deference to that regulation, the court stated:

> In the case of an alien excludable [due to advocation of certain political beliefs, *see* 8 U.S.C. § 1182(a)(28) ], Congress has delegated conditional exercise of this power to the Executive. We hold that when the Executive exercises this power negatively on the basis of a facially legitimate and bona fide reason, the courts will neither look behind the exercise of that discretion nor test it by balancing its

justification against the [constitutional] interests [affected].

408 U.S. at 770, 92 S.Ct. at 2585. In *Bertrand v. Sava, supra,* decided sixteen years after *Wong Wing Hang,* the Second Circuit held, based on *Mandel,* that as long as an exercise of discretion by the INS is legitimate and bona fide it will be upheld on review. The court in *Sava* emphasized the heavy presumption of legitimacy granted all decisions of the INS. 684 F.2d at 212–13. *See also Jean v. Nelson,* 727 F.2d 957, 977 (11th Cir.1984) (citing *Sava* and *Mandel* and concluding that the crucial question of reviewing an exercise of discretion is whether the INS acted within the scope of its sweeping delegated powers). Following these cases, this court finds it cannot reach petitioner's claims of discrimination or First Amendment violations if the INS, in declining to stay deportation, has evidence to support its decision and is not acting contrary to the law.

 It must also be noted that courts have not heavily scrutinized the basis for an exercise of the INS' discretion. In *Mandel,* for example, the court accepted the INS' decision to deny a visa based on previous unauthorized activities, even though it was noted that petitioner had not been informed of any limits on his previous visit. *See* 408 U.S. at 759, 769, 92 S.Ct. at 2580, 2585. In the regulation providing for stays of deportation, all that is required is a written notice of the disposition of the request, which includes reasons for any denial. *See* 8 C.F.R. § 243.4 (1984). No specific basis is required for the denial as long as some reasons are given. This court's review, therefore, is limited to determining whether the reasons given satisfy the minimum requirements for finding no abuse of discretion. With this background, and after examining the record, the court concludes that the denial of petitioner's stay is based on the evidence, is not premised on a misreading of the law, and passes the very limited nature of this court's review.

Petitioner originally sought a stay of deportation on March 22, 1984. The stay was denied on March 29, 1984, in a letter signed by District Director Moyer. The letter noted petitioner's extensive history with the INS and his two marriages. It found that any delays in deportation were caused by his delaying tactics and acted to his benefit, not his prejudice. It also discussed briefly the possibility of his being granted permanent resident status pursuant to 8 U.S.C. § 1254(a). In this regard, it found that his family's economic situation, and his family's community ties, would not justify a finding of extreme hardship either to petitioner or petitioner's wife. Without a finding of extreme hardship, petitioner would not be able to make a prima facie case for suspension of his deportation pursuant to Section 1254. Accordingly, the stay was denied.

 The District Director's conclusion concerning extreme hardship was based on the evidence and in accordance with applicable law. Again, when reviewing a determination that no extreme hardship exists, this court must show great deference to the INS determination. The granting of a Section 1254 suspension, like a Section 1255 adjustment, is statutorily placed firmly in the Attorney General's discretion. *See* 8 U.S.C. § 1254(a); 8 U.S.C. § 1255(a). The Seventh Circuit recently stated of petitions under Section 1255, in a statement which applies equally to petitions under Section 1254:

> The applicant bears the burden of proving that his application merits a favorable exercise of discretion, which is a matter of grace.

*Patel v. Immigration and Naturalization Service,* 738 F.2d 239, 242 (7th Cir.1984). "Extreme hardship," as required by the statute, is, in the first instance, to be defined by the Attorney General and his delegates. *See Immigration and Naturalization Service v. Wang,* 450 U.S. 139, 140, 101 S.Ct. 1027, 1029, 67 L.Ed.2d 123 (1981); *Mendoza-Hernandez v. Immigration and Naturalization Service,* 664 F.2d 635, 638 (7th Cir.1981). The limits of extreme hardship, as defined by the Immigration and Naturalization Service, and upheld by the

courts, does not necessarily enclose petitioner's situation. Petitioner has lived in this country for a number of years and is presently married to his second wife. He also has community contacts and a job from which he derives economic benefits. He does not, however, have any children in this country and there is no indication that his health or well-being depends on his remaining in this country. A number of applicants whose situation were far graver than petitioner's have been found not to be under extreme hardship and been required to leave this country. *See e.g., Moore v. Immigration and Naturalization Service,* 715 F.2d 13 (1st Cir.1983); *Diaz-Salazar v. Immigration and Naturalization Service,* 700 F.2d 1156, 1160 (7th Cir.1983). *See also Mesa v. Immigration and Naturalization Service,* 726 F.2d 39 (1st Cir.1984). The finding in District Director's Moore letter that deportation of petitioner would not constitute extreme hardship is accepted as within a proper exercise of discretion. The court finds this especially so with regard to petitioner's wife, considering that petitioner married her after the passing of a deportation date and less than one month after divorcing his first wife. This necessarily casts some doubt on the basis of the marriage and the hardship to petitioner's wife that would ensue. In addition, both petitioner and his wife were aware of the imminent possibility of his deportation at the time of the marriage.

On March 29, after receiving notice of the District Director's denial of his motion for a stay, petitioner's attorney telephonically applied for a stay from the Board of Immigration Appeals. That request was denied. The Board wrote:

> After consideration of all information, the Board has concluded that there is little likelihood that the motion to reopen, when received, will be granted. Therefore, request for a stay of deportation will be denied.

When this denial is read in conjunction with the District Director's earlier denial, the basis for the decision becomes clear. The District Director found no excessive hardship and, therefore, found that petitioner had not made a prima facie case for suspension of his deportation. Thus, the Board was correct in determining that petitioner had little chance of having his case reopened, based upon the District Director's finding.

The court finds that the decision of the INS is based on the evidence and not premised on a misinterpretation of the law. Because the INS' determination is based upon a facially legitimate bona fide reason, the court need not look behind the exercise of the INS' discretion. Petitioner will not be allowed the massive discovery he seeks in this action. The writ of habeas corpus is denied.

Because the court has denied petitioner's writ without the discovery he sought, the court sees no reason to consolidate petitioner's two actions. The motion to consolidate is also denied.