**Carlo GAMBINO, Petitioner-Appellant,**

v.

**IMMIGRATION AND NATURALIZATION SERVICE, Respondent-Appellee.**

**No. 106, Docket 31781.**

United States Court of Appeals
Second Circuit.

Argued Nov. 3, 1969.

Decided Jan. 7, 1970.

---

Edward J. Ennis, New York City (Stanley N. Zwaik, New York City, of counsel), for petitioner-appellant.

Daniel Riesel, Special Asst. U. S. Atty. (Robert M. Morgenthau, U. S. Atty. for the Southern District of New York, of counsel), for respondent-appellee.

Before WATERMAN, FRIENDLY and SMITH, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge.

Petitioner seeks review under 8 U.S.C. § 1105a of an order of the Board of Immigration Appeals (the Board) dismissing an appeal from an order of a special inquiry officer of the Immigration and Naturalization Service (the Service) ordering the deportation of petitioner pursuant to 8 U.S.C. § 1251(a) (1) on the charge that petitioner entered the United States illegally on December 23, 1921 as a stowaway. The Board also denied petitioner's requests for discretionary relief brought pursuant to §§ 244(e), 245 and 249 of the Immigration and Nationality Act of 1952 (the Act), 8 U.S.C. §§ 1254(e), 1255 and 1259. The grounds of the petition are that a departure to Canada in 1935, under the pre-examination procedures then in effect, and return to this country supersedes the 1921 arrival as an entry, that § 241(f) of the Act, 8 U.S.C. § 1251(f), bars the deportation of petitioner and that discretionary relief was improperly denied for failure to answer certain questions. We find no error, deny the petition for review and affirm the order of dismissal.

▉▉ Concededly Gambino's original entry into the United States as a stowaway in 1921 was illegal at that time (and now) and would ordinarily be a ground for deportation pursuant to § 241(a) (1) of the Act (8 U.S.C. § 1251(a) (1)). But petitioner claims that a departure to Canada and return on the same day in 1935 under a pre-examination procedure set up under regulations adopted in that year was a legal entry, or at least an entry superseding the 1921 entry so that the order based on the stowaway entry in 1921 is invalid. We agree with the Board that the 1935 entry has no such effect. Gambi-

no's departure was for the limited and temporary purpose of applying for a consular visa, which was refused in his case because of his arrest record. Such an absence and return did not effect a valid entry which would erase the effects of the earlier illegal entry. Cf. Rosenberg v. Fleuti, 374 U.S. 449, 83 S. Ct. 1804, 10 L.Ed.2d 1000 (1963); McLeod v. Peterson, 283 F.2d 180 (3d Cir. 1960). The 1935 departure and return did not erase the effects of the 1921 illegal entry, and did not supersede the previous entry; the order based on the 1921 entry is valid. Nor was petitioner's return from Canada in 1935 the equivalent of the exercise of the Attorney General's discretionary authority under the 1917 Immigration Act to admit resident aliens returning from a temporary absence. There is no record of Gambino's being lawfully admitted for permanent residence in 1935 or any time.

Gambino, a figure of some notoriety, highlighted by the revelation of his attendance at the much publicized gathering at Appalachin, New York in 1957 (see United States v. Bufalino, 285 F.2d 408 (2d Cir.1960)) has been the subject of deportation proceedings since November, 1957. At several points the proceedings were delayed due to Gambino's poor health. After various hearings and delays, a special inquiry officer found in 1966 that Gambino had various ailments including a serious heart condition but that Gambino had been able to perform other activities. The officer concluded that Gambino should submit to further interrogation, but to minimize the danger to Gambino's health, the officer directed that the questioning be conducted by written interrogatories. Gambino was sent a list of eleven questions concerning his criminal record, business activities, acquaintances and associates (many of whom are convicted felons), his visit to Joseph Barbara's home in Appalachin in 1957, and was asked for production of copies of his income tax returns for the last ten years; however, Gambino only partially answered two of

the questions and refused to answer any others. After Gambino's repeated refusal to answer the questions, the inquiry officer denied Gambino's requested relief and ordered Gambino's deportation to Italy on the basis of his illegal entry in 1921 as a stowaway.

■ The denial of the discretionary relief requested by petitioner was not an abuse of the Attorney General's discretion. Before Gambino could qualify for the discretionary relief of 8 U.S.C. § 1255 (adjustment of status to that of permanent resident) he had to meet certain objective prerequisites including that he be admissible to the United States for permanent residence under the Act. One of the grounds for inadmissibility under § 212 of the Act is conviction of a crime involving moral turpitude (§ 212(a) (9)). Gambino was convicted in 1941 for conspiracy to violate the Internal Revenue laws; since his offense included an intent to defraud the United States of taxes due, it involved moral turpitude within the meaning of the Immigration laws. Jordan v. DeGeorge, 341 U.S. 223, 71 S.Ct. 703, 95 L.Ed. 886 (1951). Since the Attorney General did not waive this conviction, it stood as a bar to petitioner's relief under 8 U.S.C. § 1255. Petitioner also applied for relief under §§ 249 and 244(e) of the Act, but both sections specifically impose a good moral character requirement for the exercise of such relief. The Service had shown that Gambino had been convicted of crimes, and he had testified at one of the prior hearings that he was earning money from the SGS Company. Under these circumstances, his activities and associations, as well as his current sources of income were surely relevant in determining whether the applicant was a person of good moral character and whether the grant of discretionary relief from deportation was justified, and Gambino's repeated failure to supply such information was a good ground for refusing discretionary relief. Kimm v. Rosenberg,

363 U.S. 405, 80 S.Ct. 1139, 4 L.Ed.2d 1299 (1960); see DeLucia v. Immigration and Naturalization Service, 370 F.2d 305 (7 Cir.1966), cert. denied 386 U.S. 912, 87 S.Ct. 861, 17 L.Ed.2d 784 (1967).

■ Petitioner raises an argument that was not presented nor discussed before the Board or the special inquiry officer; Gambino asserts that his deportation is prohibited by § 241(f) of the Act. 8 U.S.C. § 1251(f). That subsection provides in relevant part:

> "The provisions of this section relating to the deportation of aliens within the United States on the ground that they are excludable at the time of entry as aliens who have sought to procure * * * entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen * * *."

Although we would not normally allow the raising of a new objection to the Board's order at this stage in the proceedings, cf. Unemployment Compensation Commission of Alaska v. Aragon, 329 U.S. 143, 67 S.Ct. 245, 91 L.Ed. 136 (1946), whether stowaways are included within those who sought to procure entry by means of "fraud" in the meaning of this subsection has not been determined. Since the subsection in question is directed at preventing great hardships upon families, deportation is such a drastic order considering Gambino's age, health, length of residence in this country and familial ties here, and since other stowaways, long time residents with families here may face a similar determination, we feel that the issue raised should not be summarily dismissed despite its late appearance in these proceedings. We have therefore considered the question and have concluded that section 241(f) was not intended by the Congress to apply to those who entered as stowaways.[1]

1. Apart from the considerations set forth in this opinion, the Board would be compelled to rule that way in deference to the Attorney General's opinion of May 1,

Section 212(a) of the Immigration and Nationality Act, 8 U.S.C. § 1182(a), lists thirty-one classes of excludable aliens,[2] including:

> (18) Aliens who are stowaways;
>
> (19) Any alien who seeks to procure, or has sought to procure, or has procured a visa or other documentation, or seeks to enter the United States, by fraud, or by willfully misrepresenting a material fact.

Section 241(f), 8 U.S.C. § 1251(f), which creates an exception from deportation for aliens "otherwise admissible" and having certain family ties with persons lawfully in this country, applies only to the deportation of aliens

> on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation. * * *

As the Supreme Court stated in Immigration and Naturalization Service v. Errico, 385 U.S. 214, 217, 87 S.Ct. 473, 476, 17 L.Ed.2d 318 (1966), "[l]iterally, § 241(f) applies only when the alien is charged with entering in violation of § 212(a) (19) of the statute." This is confirmed by the House Report on § 241(f), which indicates that the section was intended to apply only to § 212(a) (19), not to any other subsection in § 212(a). See H.R.Rep.No.1199, 85th Cong., 1st Sess., in [1957] 2 U.S.Code

1969, in Matter of Lee, holding § 241(f) inapplicable to an alien who avoids an immigration inspection by falsely representing he is a citizen. Petitioner admits as much. See also the Board's ruling in Matter of Cadiz, Jan. 9, 1968, that § 241(f) does not apply to non-immigrant visitors.

2. An alien shall be deported if
   at the time of entry [he] was within one or more of the classes of aliens excludable by the law existing at the time of such entry.
   Immigration & Nationality Act § 241(a) (1), 8 U.S.C. § 1251(a) (1).

Cong. & Admin.News, p. 2016, at pp. 2022–2024. Although the "administrative authorities have consistently held that § 241(f) waives any deportation charge that results directly from the misrepresentation regardless of the section of the statute under which the charge was brought, provided that the alien was 'otherwise admissible at the time of entry,'" 385 U.S. at 217, 87 S. Ct. at 476, neither that practice nor the *Errico* holding that § 241(f) includes aliens guilty of fraud or misrepresentation who were inadmissible because of quota problems aids petitioner here. He not only has not been but could not have been charged under § 212(a) (19). Apart from all else, an alien is subject to deportation if "within one or more of the classes of aliens excluded by the law existing *at the time of such entry*," § 241(a) (1), 8 U.S.C. § 1251(a) (1) [emphasis supplied], and § 212(a) (19) was not enacted until 1952, see 1 Gordon & Rosenfield, Immigration Law & Procedure § 4.7c at 4–38 (rev.ed.1967), whereas petitioner entered the country in 1921.[3]

Stowaways are given special treatment throughout the present Act, as they have been in past enactments.[4] When Congress repeated the language of § 212(a) (19) in § 241(f), it could not possibly have thought this apt to encompass stowaways deportable because they were excludable under § 212(a) (18) or its predecessors. In another section of the very enactment that brought § 212(a) (19) into being, Congress sub-

3. On the other hand, "stowaways" were an excludable class at the time of petitioner's entry, as the Immigration and Naturalization Service found, see Immigration Act of 1917, § 3, 39 Stat. 874, and deportation on that ground was proper. See Lehman v. United States, 353 U.S. 685, 77 S.Ct. 1022, 1 L.Ed.2d 1122 (1957), upholding deportation of an alien who entered as a stowaway in 1919.

4. See, e. g., Immigration Act of 1917, § 3, 39 Stat. 874.

jected owners of vessels bringing in stowaways to special penalties, different from those imposed for bringing in aliens with invalid visas. See Immigration & Nationality Act of 1952, §§ 273(a) and 273(d), presently 8 U.S.C. § 1323(a) and (d); see also 1 Gordon & Rosenfield, *supra,* § 2.34 at 2–166. More important, in 1952, as part of the same enactment, Congress eliminated the Attorney General's prior discretion to admit stowaways who were "otherwise admissible." See 1 Gordon & Rosenfield, *supra,* § 2.34 at 2–166. Yet when the 1961 Congress enacted a provision giving the Attorney General discretion to admit an alien who had "procured * * * entry into the United States by fraud," § 212(i), 8 U.S.C. § 1182(i),—a section nearly identical in scope and wording and obviously intended to apply to the same class of aliens as § 241(f)[5]—the House Committee Report on the bill stated that this was merely a codification of existing law. See H.R. Rep.No.1086, 87th Cong., 1st Sess., in [1961] 2 U.S.Cong. & Admin.News, pp. 2950–2981. The ambiguous statement in the House Committee Report of 1957 that a predecessor of § 241(f) would give relief to Mexican nationals who were able to enter the United States "during the time when border-control operations suffered from regrettable laxity," H.R.Rep.No.1199, 85th Cong., 1st Sess., in [1957] 2 U.S.Code Cong. & Admin.News, pp. 2016, 2024 greatly relied on by petitioner, is wholly insufficient to overcome the obvious intention to address § 241(f) to the same class of aliens covered by § 212(a) (19), the statements of the committee chairman on the floor of the House and Senate, 103 Cong.Rec. 16301 (1957) and 107 Cong.Rec. 19653–54 (1961), and the history demonstrating that when Congress meant to legislate about stowaways, it said "stowaways."

Petitioner argues that, when it comes to barring deportation because close family ties have subsequently been established, there is little reason to distinguish stowaways from those who lied about their qualifications for admission. But apart from all that has already been said, there is further proof that Congress intended the distinction to be made. One reason given for extending mandatory relief to all those encompassed by § 212(a) (19) was that at the time the predecessor of § 241(f) was passed, many private bills were pending that would have barred deportation of aliens who had been guilty of misrepresentation but whose deportation would work extreme hardship to their families. The House Committee Report stated:

> [I]t is unfair and improper to extend the benefit of legislative relief solely to a few selected individuals who are in a position to reach the Congress for redress of their grievances. It is felt that that humanitarian approach should be extended to an entire defined class of aliens rather than to selected individuals.

H.R.Rep.No.1199, 85th Cong., 1st Sess., in [1957] 2 U.S.Code Cong. & Admin. News, pp. 2016, 2024. Congress' commendable desire to extend equal mandatory relief to all those within the class defined by § 212(a) (19) cannot be translated into similar beneficence for stowaways. Until Congress demonstrates an intention to do so, and it has shown no disposition that way, stowaways, like aliens subject to deportation under the numerous other categories of § 212(a), must look to the Attorney General for discretionary relief. We have pointed out there was ample reason for declining to extend this to Gambino.

The petition for review is denied. The order of the Board of Immigration Appeals is affirmed.

---

5. The only difference between the sections is that § 212(i) applies to the exclusion of aliens and gives the Attorney General discretion whether to admit those "otherwise admissible" and with family ties, whereas § 241(f) applies to deportation after entry and is mandatory if the same conditions are met by the alien.