Saied PARCHAM, Petitioner,

v.

IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.

No. 81–1529.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 6, 1985.

Decided Aug. 13, 1985.

David Goren, Washington, D.C., for petitioner.

James A. Hunolt, Dept. of Justice, Washington, D.C. (Lauri Steven Filppu, General Litigation and Legal Advice Section, Criminal Division, Washington, D.C., on brief), for respondent.

Before WINTER, Chief Judge, WIDENER, Circuit Judge, and KELLAM, District Judge, United States District Court for the Eastern District of Virginia, sitting by designation.

WIDENER, Circuit Judge:

Petitioner Saied Parcham, an Iranian national, appeals an order of the Board of Immigration Appeals (Board) affirming an immigration judge's finding of deportability and denial of voluntary departure. Parcham does not contest the finding of deportability, and appeals only from the denial of voluntary departure.[1] We affirm.

The facts before us are not in dispute. Parcham entered the United States as a nonimmigrant student in November 1977. He was authorized to remain in the United States, including visa extensions, until May 31, 1979. Upon entering the country, Parcham enrolled at an English language school in Washington, D.C. He later transferred, with permission from the Immigration and Naturalization Service, to Bay College in Baltimore, Maryland. Parcham subsequently transferred, again with permission, to Community College of Baltimore. In the fall of 1979, following the expiration of his authorized stay, Parcham transferred without permission to Morgan State University in Baltimore.

On April 14, 1980, Parcham was charged with remaining in the United States for a period longer than authorized, in violation of 8 U.S.C. § 1251(a)(2), under the Immigration and Nationality Act of 1952, as amended. A deportation hearing was held on January 5, 1981, at which time the immigration judge found Parcham's deportability established. At that point in the proceeding, Parcham made application for a voluntary departure, as permitted in the

1. Voluntary departure offers significant advantages over deportation. An alien who is granted voluntary departure avoids the stigma of deportation, is permitted to choose his own destination, and finds it considerably easier to gain reentry to the United States. See *Landon v. Plasencia,* 459 U.S. 21, 26 n. 4, 103 S.Ct. 321, 326 n. 4, 74 L.Ed.2d 21 (1982); *Jain v. INS,* 612 F.2d 683, 686 n. 1 (2d Cir.1979), cert. denied, 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980).

discretion of the Attorney General, pursuant to 8 U.S.C. § 1254(e) and 8 C.F.R. § 244.1–.2. Such application may also be authorized by the immigration judge. See 8 C.F.R. §§ 242.8(a), 242.17(b) and 244.1.

During the presentation of testimony on whether Parcham's circumstances merited the benefit of voluntary departure, it became apparent that Parcham had not limited his activities in the United States to attending school. First, Parcham acknowledged his participation in a violent demonstration in California against the Shah of Iran, at which police cars were overturned and burned, and stones were thrown at fire fighters. Second, while Parcham contended he was a monitor at the demonstration, and was responsible for maintaining a peaceful protest, it was established that, at the time of the hearing, Parcham was the subject of a pending felony arson charge stemming from his participation in the demonstration. Third, Parcham testified to his involvement with another criminal charge arising from an altercation with a police officer while in a police station. Parcham was found guilty of disorderly conduct or resisting arrest and was fined $15.00.

In support of his request for voluntary departure, Parcham testified that he could leave the United States at his own expense and was a person of good moral character as minimally required for voluntary departure under 8 U.S.C. § 1254(e). He also pointed to his status as a full-time student with satisfactory grades. The Board, however, relying upon Parcham's involvement in a violent demonstration, the pending felony charge, and the resisting arrest incident, concluded that Parcham's behavior while in the United States did not warrant the granting of voluntary departure. It affirmed the immigration judge.

On appeal, Parcham contends that the Board arbitrarily and capriciously abused its discretion in denying the application for voluntary departure. In particular, Parcham argues, first, that the reliance on Parcham's involvement in the anti-Shah protest was an impermissible consideration of the exercise of his First Amendment rights, and, second, that reliance upon the arrest for arson and the pending felony charge, without conviction, was also an improper factor for consideration.

■ The decision of whether to permit an admittedly deportable alien to depart voluntarily is a matter within the discretion of the Attorney General. 8 U.S.C. § 1254(e). As noted earlier, an immigration judge qualifies as an official authorized to exercise such discretion. See *Jay v. Boyd*, 351 U.S. 345, 351, 76 S.Ct. 919, 923, 100 L.Ed. 1242 (1956). The relevant statutory provision, 8 U.S.C. § 1254(e), provides in part:

> The Attorney General may, in his discretion, permit any alien under deportation proceedings ... to depart voluntarily from the United States at his own expense in lieu of deportation if such alien shall establish to the satisfaction of the Attorney General that he is, and has been, a person of good moral character for at least five years immediately preceding his application for voluntary departure....

In reviewing a refusal to favorably exercise the discretionary relief of voluntary departure, we only examine whether the discretion was actually exercised and whether it was exercised in an arbitrary and capricious manner. *Carnejo-Molina v. INS*, 649 F.2d 1145, 1151 (5th Cir.1981); *Cuevas-Ortega v. INS*, 588 F.2d 1274, 1278 (9th Cir.1979); *Fernandez-Gonzalez v. INS*, 347 F.2d 737, 740 (7th Cir.1965).

■ In a proceeding to consider an application for voluntary departure, the burden of proof rests with the alien to establish that a favorable exercise of discretion is warranted. *Cuevas-Ortega v. INS*, 588 F.2d at 1278. Initially, there are two statutory requirements for voluntary departure which the alien has the burden of proving. The alien must establish, first, the ability to pay for his departure, and, second, his good moral character for at least five years preceding the application for voluntary departure. 8 U.S.C. § 1254(e).

■ At the deportation hearing, Parcham testified affirmatively as to both requirements. Thus, his testimony, if believed, tended to show that he was statutorily eligible for voluntary departure. However, while the satisfaction of these minimum statutory requirements is necessary for consideration of voluntary departure, it does not follow that they are sufficient for its granting. It is clear the statute does not contemplate that all aliens who fulfill such requirements merit discretionary relief as a matter of course. See *Hibbert v. INS*, 554 F.2d 17 at 20–21 (2d Cir.1977). In similar, but not the same, context, the Court has so held. *Hintopoulos v. Shaughnessy*, 353 U.S. 72, 77, 77 S.Ct. 618, 621, 1 L.Ed.2d 652 (1957). Rather, once the minimal requirements are met, discretion of the Attorney General must yet be exercised, and Parcham still bears the burden of proving the Attorney General abused the exercise of his discretion in denying voluntary departure. See 8 C.F.R. § 242.-17(d) and (e).

The Board considered the discretionary exercise of its authority in its well-reasoned decision as follows:

> The immigration judge's decision emphasized three adverse factors: the violent nature of the demonstration in which the respondent was involved, the fact that charges of arson were still pending against him, and his admission of a conviction for a criminal offense characterized as disorderly conduct or resisting arrest following an altercation with a police officer, for which he was fined $15. We believe that the denial of voluntary departure was warranted.

> The respondent's conviction for behaving improperly toward a police officer is clearly an adverse factor which militates against a favorable exercise of discretion. Furthermore, inasmuch as serious felony charges are still pending against the respondent, we do not believe it is inappropriate to consider them in a determination on the merits of the respondent's application for discretionary relief. Unlike the police reports [improperly] employed in *Sierra-Reyes v. INS*, 585

F.2d 762 (5th Cir.1978), which enumerated charges that had apparently been dropped for insufficient evidence, the respondent [here] appeared twice in court for the arson charge before the proceedings were continued due to the delicate political situation during the captivity of American hostages in Iran. The prosecution therefore appears to remain active on the charges, which we believe present an additional adverse factor.

> The respondent has submitted several letters from his professors attesting to his academic progress. However, we do not consider his successful completion of studies to be a significant equity. Furthermore, we are not impressed by the respondent's claim that he only acted as a monitor in the demonstration when his activity resulted in the charges of arson against him.

> The respondent's equities are minimal. On the other hand, he has a criminal conviction resulting from violent conduct toward a police officer and is the subject of pending arson charges. Under these circumstances, we agree with the immigration judge's assessment that a favorable exercise of discretion is not warranted.

■ We concur in the decision of the Board on this issue, and in that the Board exercised its discretion in a manner that was neither arbitrary nor capricious, and that its decision was supported by substantial evidence.

■ In so holding, we reject Parcham's contention that the Board's reliance on his participation in the demonstration violated his rights to free speech and assembly under the First Amendment. It has long been held that aliens residing in this country enjoy the protection of the First Amendment. *Bridges v. Wixon*, 326 U.S. 135, 148, 65 S.Ct. 1443, 1449, 89 L.Ed. 2103 (1945); see *Bridges v. California*, 314 U.S. 252, 62 S.Ct. 190, 86 L.Ed. 192 (1941). Included in that protection is the right to peaceful expression of views through public demonstration. *Carey v. Brown*, 447

U.S. 455, 460, 100 S.Ct. 2286, 2289, 65 L.Ed.2d 263 (1980); *Shuttlesworth v. Birmingham,* 394 U.S. 147, 152, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969). However, it is also the law that First Amendment protection does not extend to violent demonstrations. *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972). Whatever Parcham's role was in the demonstration, there is no doubt that he participated and there is no doubt that the demonstration was violent. While the Board was "not impressed" by Parcham's claim that he acted as a monitor in the demonstration, even if that claim be true, we think the fact of his participation and subsequent indictment were factors the Attorney General was permitted to consider in deciding whether or not to exercise his discretion in favor of Parcham.

■■■ We also find no error in the Board's reliance on the pending felony arson charges. Evidence of an alien's conduct, without a conviction, may be considered in denying the discretionary relief of voluntary departure. See *Aalund v. Marshall,* 461 F.2d 710, 713 (5th Cir.1972); *Gambino v. INS,* 419 F.2d 1355, 1358 (2d Cir.1970); *Talavera v. Pederson,* 334 F.2d 52, 57 (6th Cir.1964). Thus, we find that the Board was entitled to consider the pending arson charges in deciding whether or not to exercise its discretion in favor of or against voluntary departure.[2]

Accordingly, the decision of the Board is AFFIRMED.[3]

HARRISON L. WINTER, Chief Judge, dissenting:

As I view it, the immigration judge's decision to deny the request for voluntary departure rests in good measure upon impermissible considerations, specifically Parcham's nationality and his exercise of his first amendment rights. By considering these factors, the immigration judge abused her discretion and tainted her decision. By affirming the immigration judge's decision without disavowing these impermissible considerations and without addressing Parcham's constitutional challenge, the Board of Immigration Appeals (BIA) similarly abused its discretion. I therefore respectfully dissent. I would reverse the decision of the BIA and remand

---

**2.** We are now told that Parcham was acquitted of the arson charges pending this appeal. That does not alter our decision. We think the Attorney General is entitled to consider the facts as they exist at the time he acts. In particular, he does not have to wait for the disposition of pending criminal charges.

**3.** The dissent, in large or even the greater part, urges that we reverse because of the Immigration Judge's consideration of Parcham's nationality, and the judge's basing her opinion in part upon foreign policy factors the dissent contends are impermissible for consideration. What the dissent does not consider, however, is that our role is limited to reviewing the order of the Board for an abuse of its broad discretion, and we may not substitute our judgment for that of the Board. E.g. *Strantzalis v. INS,* 465 F.2d 1016, 1017 (3d Cir.1972); *Kalatjis v. Rosenberg,* 305 F.2d 249, 250 (9th Cir.1962); *Polites v. Sahli,* 302 F.2d 449, 451 (6th Cir.1962), cert. denied, 371 U.S. 916, 83 S.Ct. 259, 9 L.Ed.2d 175 (1962). See *INS v. Jong Ha Wang,* 450 U.S. 139, 145, 101 S.Ct. 1027, 1031, 67 L.Ed.2d 123 (1981).

In exercising its discretion, the Board is not bound by the Immigration Judge's order, but is free to make its own determination. *Goon Wing Wah v. INS,* 386 F.2d 292, 293–94 (1st Cir.1967); *DeLucia v. INS,* 370 F.2d 305, 308 (7th Cir.1966). A careful reading of the decision of the Board from beginning to end does not disclose that it was based even in part upon Parcham's nationality or that the Board delved into foreign policy. Thus, the Board chose not to rest its decision on either factor the dissent considers impermissible, and instead based its determination on factors we have found to be otherwise permissible for consideration. We are unable to assume, as the dissent's argument seems to demand, that factors not mentioned by the Board were taken into consideration by it, because it did not explicitly disavow them, and then proceed to review its decision on that basis. *Batoon v. INS,* 707 F.2d 399, 402 (9th Cir. 1983). "The grounds upon which an administrative order must be judged are those upon which the record discloses that its action was based." *S.E.C. v. Chenery Corp.,* 318 U.S. 80, 87, 63 S.Ct. 454, 459, 87 L.Ed. 626 (1943). Indeed, even Judge Friendly's opinion in *Hang v. INS,* 360 F.2d 715 (2d Cir.1966), upon which the dissent heavily relies, requires that for a finding of abuse of discretion, the decision must rest upon the impermissible consideration. Id. at 719. As this was not the case, there exists no basis for concluding the Board abused its discretion.

for reconsideration free from the impermissible factors that influenced the denial of Parcham's request.

### I.

To appreciate fully the extent to which the immigration judge abused her discretion, one must consider in full that portion of her decision which addresses the request for voluntary departure.[1] In pertinent part, the decision reads:

> The respondent applied for the privilege of voluntary departure. That request will be denied in the exercise of discretion. The respondent is the subject of a pending felony arson charge in California, arising out of his participation in a demonstration there that received coverage on national television. The demonstration became quite violent and included burning of police cars at the residence of the Shah's sister. The respondent has been charged in connection with those incidents. He testified that the case has been continued at the moment during the holding of the hostages by Iran. He also has been the subject of another criminal charge, one to which he pled guilty and paid a $15 fine, which resulted after an altercation with some law enforcement officers. He was not certain of the exact nature of the offense and described it as either resisting arrest or for disorderly conduct.

> This country is faced with an international assault on its value systems, among them respect for international law, and the honoring of commitments. This country has been involved in negotiations with the country of which the respondent is a national over the release of the United States hostages currently held there.

It has appeared several times that agreement has been reached in the past and then that additional requirements have been urged by the country of Iran. The country of Iran has been charged under the United Nations procedures for violating international law and yet continues to hold the hostages.

> While we who are charged with upholding the American system of law, will continue to accord fair process to supporters of that regime present in our country, we are not no way [sic] compelled to exercise discretion favorably to a national of that country. We do not choose to exercise favorable discretion in this case where the petitioner has participated in a violent demonstration against our country, where he has charges of arson pending against him and where he has been involved in another matter involving violence against law enforcement officers. This forum is not the place to decide the issue of guilt or innocence involving those charges, and we are cognizant that all persons in our system are considered innocent until convicted. However, we are not compelled to exercise discretion favorably and we do not in this case.

Notwithstanding the generous gloss the BIA put on the immigration judge's decision, it is clear that her decision emphasized four factors, which she thought reflected on Parcham unfavorably: his nationality; the nature of the demonstration in California, both with regard to the conduct of the demonstrators and the content of their protest; the pending arson charges;[2] and his arrest in Baltimore resulting in a guilty plea and $15 fine.[3]

---

**1.** The INS did not oppose Parcham's request for voluntary departure; nor did it introduce any evidence for the purpose of showing that he should not receive the requested relief.

**2.** Parcham has since been acquitted of the arson charges. *State v. Parcham,* No. A07–8317 (Cal. Super.Ct. Oct. 5, 1981).

**3.** Although the immigration judge was entitled to consider the Baltimore arrest, both she and the BIA characterized the incident in a manner

unsupported by the evidence in the record. The only evidence offered regarding the Baltimore arrest was Parcham's own testimony. It is unclear from the record whether Parcham was charged with disorderly conduct or with resisting arrest. According to Parcham, the arrest occurred after he went to a Baltimore police station to post bond for a friend. Upon learning that he and his friend were Iranian, the police subjected both to verbal abuse and arrested Parcham as he tried to leave the station

## II.

The immigration judge's consideration of Parcham's nationality alone mandates reversal. The discretion of the Attorney General to grant or deny a deportable alien's request for voluntary departure or other discretionary relief from deportation is admittedly broad. *See INS v. Rios-Pineda,* —— U.S. ——, ——, 105 S.Ct. 2098, 2101, 85 L.Ed.2d 452 (1985); *Wong Wing Hang v. INS,* 360 F.2d 715, 718–19 (2 Cir. 1966). Yet that discretion is not limitless. *Id.* Though finding no abuse of discretion in *Rios-Pineda,* the Supreme Court reaffirmed in that case that the Immigration and Nationality Act (Act) does not permit "unreasoned or arbitrary exercise of discretion" by the Attorney General or those who act for him. —— U.S. at ——, 105 S.Ct. at 2103. Moreover, where denial of discretionary relief is predicated on several factors, consideration of a single improper factor may so taint the decision as to render the entire determination defective. *Siang Ken Wang v. INS,* 413 F.2d 286 (9 Cir.1969).

Judge Friendly's discussion in *Wong Wing Hang* of the limits of discretion under the Act remains the authoritative statement of the issue. In that case, dealing with the denial of an alien's request for suspension of deportation, another type of discretionary relief from a deportation order, the court sketched the limits of the Attorney General's or his delegate's discretion as follows:

> Without essaying comprehensive definition, we think the denial of suspension to an eligible alien would be an abuse of discretion if it were made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis such as an invidious discrimination against a particular race or group....

*Wong Wing Hang,* 360 F.2d at 719; *see also, De La Luz v. INS,* 713 F.2d 545, 546 (9 Cir.1983) (abuse of discretion to deny suspension of deportation to alien because immigration judge believed she should have left her ne'er-do-well, alcoholic husband though her efforts to maintain her family life were in keeping with her religious beliefs); *Bertrand v. Sava,* 684 F.2d 204, 212 (2 Cir.1982) (reaffirming *Wong Wing Hang* ); *So Chun Chung v. INS,* 602 F.2d 608, 611 (3 Cir.1979) (remand required where denial of discretionary relief may have been prompted by petitioner's prior receipt of welfare benefits).

Clearly the immigration judge considered an impermissible factor of the sort Judge Friendly warned against—Parcham's national origin. Her decision contains an extended and extraneous discussion of the Iranian hostage crisis in which she describes Iran as an outlaw state and associates it with what she describes as "an international assault on [America's] value systems." Immediately thereafter, she boldly states that though obliged "to accord fair process to supporters" of the Iranian government she does not feel compelled to exercise discretion favorably for Iranian nationals. The decision's anti-Iranian animus is patent. The impermissibility of such invidious discrimination on the basis of nationality is equally clear. *See, e.g., Vigile v. Sava,* 535 F.Supp. 1002, 1016 (S.D.N.Y.), *rev'd on other grounds,* 684 F.2d 204 (2 Cir.1982).

In the context of deportation proceedings, aliens are entitled to fair procedures that satisfy the minimum requirements of due process. The Japanese Immigrant Case (*Yamataya v. Fisher* ), 189 U.S. 86, 100–01, 23 S.Ct. 611, 614–15, 47 L.Ed. 721 (1903). While applicants for discretionary relief may not be entitled to the full range of procedural protections afforded to aliens

---

house. Parcham testified that he did not assault any police officers. The immigration judge was, of course, entitled to discredit Parcham's version of the events. She erred, however, in assuming that the incident involved "violence against law enforcement officers," since the only evidence in the record was Parcham's deni-

al of any such assault. Neither a charge of disorderly conduct nor one of resisting arrest necessarily implies violence against police officers. The BIA repeated this error in stating that Parcham "has a criminal conviction resulting from violent conduct toward a police officer."

contesting deportability, *see Jay v. Boyd,* 351 U.S. 345, 76 S.Ct. 919, 100 L.Ed. 1242 (1956), the decision to grant or deny their request must be rendered by an impartial decision-maker. The immigration judge's decision denying Parcham's application for voluntary departure casts serious doubt on her impartiality.

Consideration of Parcham's nationality was also impermissible because it involved the immigration judge in an unauthorized act of foreign policy. Decisions involving the right of aliens to enter the United States or to remain here often implicate our relations with foreign powers. Accordingly, the legislative and executive branches alone are typically accorded the power to draw distinctions on the basis of nationality in the area of immigration and naturalization. These branches are granted wide latitude to draw such distinctions, so long as the distinctions drawn are not wholly irrational. *Fiallo v. Bell,* 430 U.S. 787, 792, 97 S.Ct. 1473, 1477, 52 L.Ed.2d 50 (1977); *Mathews v. Diaz,* 426 U.S. 67, 81, 96 S.Ct. 1883, 1892, 48 L.Ed.2d 478 (1976); *Harisiades v. Shaughnessy,* 342 U.S. 580, 588–89, 72 S.Ct. 512, 518–19, 96 L.Ed. 586 (1950); *Narenji v. Civiletti,* 617 F.2d 745, 747 (D.C.Cir.), *cert. denied,* 446 U.S. 957, 100 S.Ct. 2928, 64 L.Ed.2d 815 (1980). Immigration judges have no similar authority to ground their decisions in considerations of foreign relations except as instructed by Congress or the executive by statute, executive order, or regulation. The immigration judge exceeded her authority when she introduced her own view of foreign policy into the determination of Parcham's request for relief from deportation. *Cf. Yassini v. Crosland,* 618 F.2d 1356, 1360–61 (9 Cir.1980).

For the reasons described above, the immigration judge abused her discretion when she considered Parcham's nationality in ruling on his request for voluntary departure. A review of her decision makes clear that this impermissible consideration was not incidental to her decision. Instead, it was a major factor that so tainted her decision that it raises substantial doubt as to whether or not she would have exercised her discretion differently absent its consideration. Accordingly, the BIA should have remanded for reconsideration without regard for Parcham's nationality and, as discussed below, without adverse consideration of his exercise of his first amendment freedoms. *Cf. Siang Ken Wang,* 413 F.2d at 287; *Kovac v. INS,* 407 F.2d 102, 107–08 (9 Cir.1969). At the very least, it should have disavowed this rationale for denying voluntary departure. By failing to do either, the BIA abused its discretion, and its decision should be reversed.[4]

### III.

Both the immigration judge and the BIA further abused their discretion in treating Parcham's exercise of his first amendment

---

**4.** The BIA is created by 8 C.F.R. § 3.1, and it is authorized to perform such functions as are delegated to it by the Director, Executive Office for Immigration Review. By regulation the Board is vested with appellate jurisdiction, *inter alia,* over decisions on applications to allow voluntary departure. In an appropriate case, the BIA may grant de novo review, but ordinarily it gives great weight to the factual determinations of the immigration judge generally and as they relate to the grant of discretionary relief. *See* 1 Gordon & Rosenfeld, Immigration Law and Procedure § 1.10e at 1–88.1.

In the instant case, I conclude that the BIA acted in an appellate capacity and did not give de novo review. Its opinion sets forth that the immigration judge "emphasized" three factors adverse to Parcham's request for voluntary departure, and it summarizes these factors in sanitized form. The opinion does not purport to find the facts anew. Indeed it perpetuates an erroneous finding of fact of the immigration judge that Parcham admitted to a conviction "resulting from violent conduct toward a police officer." *See* n. 3, *supra.* Certainly it does not disavow reliance on the references of the immigration judge to Parcham's nationality, to the nature of the demonstration in California both as to the conduct of the demonstrators and the content of the protest, to her view of the "international assault" on the value systems of the United States, and to her evident displeasure with the government of Iran. Agreeing "with the immigration judge's assessment that a favorable exercise of discretion is not warranted," the BIA dismissed the appeal.

Since BIA was acting solely in an appellate capacity, any error committed by the immigration judge and uncorrected by the Board taints the correctness of the BIA's decision.

rights punitively. The government may not burden the exercise of first amendment rights by denying a benefit to a person because of his decision to exercise those rights. Otherwise, it could inhibit speech by indirect means under circumstances where direct regulation would be clearly impermissible. *Perry v. Sindermann,* 408 U.S. 593, 597, 92 S.Ct. 2694, 2697, 33 L.Ed.2d 570 (1972). It is well settled that aliens residing within our borders possess first amendment rights, *Bridges v. Wixon,* 326 U.S. 135, 148, 65 S.Ct. 1443, 1449, 89 L.Ed. 2103 (1945), and that the first amendment protects public demonstrations. *Shuttlesworth v. City of Birmingham,* 394 U.S. 147, 152, 89 S.Ct. 935, 939, 22 L.Ed.2d 162 (1969). Of course, violent conduct is not protected expression. *Grayned v. City of Rockford,* 408 U.S. 104, 116, 92 S.Ct. 2294, 2303, 33 L.Ed.2d 222 (1972).

On these basic premises, I have no disagreement with the majority. However, the majority takes a further step in its analysis, with which I must disagree. The majority states that regardless of Parcham's conduct during the demonstration, his participation is unprotected so long as the demonstration became violent. Indeed, it says that even if Parcham has truthfully described his role as a monitor who sought to maintain peace and order, the immigration judge and BIA may consider unfavorably his mere presence at a demonstration where violent acts occurred in deciding whether or not he should receive discretionary relief from deportation.

I do not agree that any violence so taints a demonstration that conduct of peaceful participants loses its character as protected speech. It is not uncommon for large political demonstrations, no matter how orderly and peaceable in general, to result in some arrests because of the violent conduct of some participants. Yet the *Grayned* dictum cannot reasonably mean that the first amendment rights of demonstrators who neither act violently nor aid and abet the violence of others is dependent on the actions of those who do.[5] Thus, if Parcham conducted himself peacefully at the California demonstration, as he claimed he did, the denial of discretionary relief from deportation on the ground of his participation in the demonstration would violate the first amendment.

Of course, any violent acts committed by Parcham may not be justified as protected speech, and the State of California believed that there was enough evidence to justify prosecuting Parcham for felony arson, albeit unsuccessfully. The existence of the pending arson charges, coupled with Parcham's testimony denying any violent behavior at the demonstration and describing his role as a monitor, raised a factual issue as to whether or not his participation in the demonstration was peaceful, and thus protected expression. Even if the immigration judge and BIA were entitled to weigh this evidence as they did in Parcham's disfavor, their consideration of Parcham's participation in the California demonstration is more basically and fatally flawed. Specifically, the decision of the immigration judge demonstrates that she looked behind Parcham's conduct and assessed the content of his speech in denying his request for discretionary relief.

Just as an arsonist may not shield his acts behind the first amendment by shouting political slogans as he lights the match, a court may not impose additional penalties upon the arsonist for sloganeering as he

---

5. To hold otherwise would dramatically chill free expression by making would-be participants in demonstrations run the risk of losing government benefits because of the violence of other demonstrators. The Supreme Court has rejected the idea of the "heckler's veto." *See Edwards v. South Carolina,* 372 U.S. 229, 83 S.Ct. 680, 9 L.Ed.2d 697 (1963); *Terminiello v. Chicago,* 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131 (1949); *but see Feiner v. New York,* 340 U.S. 315, 71 S.Ct. 303, 95 L.Ed. 295 (1951). The majori-

ty's approach, however, creates the possibility of an agent provocateur's veto that would similarly permit a sufficiently dedicated militant minority to stifle other voices by tainting demonstrations they oppose with violent conduct. These comments are certainly not intended to suggest that the violent acts involved in the California demonstration in question were the work of agent provocateurs or even of only a minority of the demonstrators. Those questions are not in issue in this case. Only Parcham's conduct is.

commits his crimes. Even if the immigration judge and BIA could consider Parcham's allegedly violent participation in the demonstration and the pending charges stemming from that participation, they could not penalize him for the content of the political views expressed. In the immigration judge's opinion, however, content and conduct were inextricably intertwined. The decision speaks of the continuing obligation to accord fair process, but no more, "to supporters of that regime," thereby impliedly identifying Parcham as a supporter of the Iranian government. More important, the decision recites that discretion will not be exercised favorably in part because "petitioner has participated in a violent demonstration *against our country.*" (emphasis added). Clearly, the immigration judge considered not only the possibility that Parcham had acted criminally but also the message that he sought to communicate, and she reacted punitively to the criticism of United States foreign policy she perceived in that message. In context, one sees how important this impermissible consideration may have been to the immigration judge's decision. Her discourse on foreign affairs and the hostage crisis contains the image of America embattled, with Iran the foremost assailant. Her discussion of Parcham, one of the "supporters of that regime" who has demonstrated "against our country," echoes that imagery. I do not believe that the immigration judge distinguished between Parcham's conduct and the content of his protest. Accordingly, I believe that the content of Parcham's protest may have been a substantial unfavorable factor impermissibly considered by the immigration judge.

Because considerations of conduct and content were interwoven in the immigration judge's decision, the BIA should have remanded for reconsideration. Instead, it affirmed without disavowing either the immigration judge's consideration of Parcham's nationality or her consideration of his political beliefs. Its failure to do so leaves open the possibility that the BIA implicitly relied on these impermissible factors. Moreover, although the BIA noted Parcham's first amendment claim, it failed to address that claim in its decision. I would reverse the BIA's decision and remand for reconsideration without reference to the impermissible considerations that have tainted the denial of Parcham's request for relief.[6]

## IV.

Because the denial of voluntary departure is tainted by consideration of Parcham's nationality and political beliefs, there is sufficient reason to reverse and remand. But since the majority approves consideration of the mere fact of the then-pending charges—now resolved in Parcham's favor—as an additional reason to deny him voluntary departure, I am constrained to comment on that factor.[7] Because deporta-

---

**6.** As previously noted, Parcham's trial in the Superior Court of Santa Monica, California on the arson charges ended in a judgment of acquittal. Even if the then-pending charges permitted the characterization of Parcham's conduct as unprotected speech, on remand, in light of Parcham's acquittal, the charges would no longer support such a conclusion. As a result, I would not permit Parcham's participation in the California demonstration to be considered as an adverse factor in deciding whether to grant voluntary departure unless the INS offers some evidence other than the bare charges against Parcham that shows that his involvement was violent, and therefore outside of the scope of protected expression.

**7.** As a policy matter, I question the wisdom of relying on pending charges under most circumstances where the INS could stay decision until

the completion of the alien's criminal trial. The principal advantage of voluntary departure to a deportable alien is that an alien who leaves under voluntary departure may apply for immediate readmission to the United States while an alien who is deported cannot apply for readmission for five years, unless the Attorney General grants him permission to do so. 8 U.S.C. § 1182(a)(17). The five-year statute of limitations was added by Congress by amendment effective December 29, 1981. Immigration and Nationality Act Amendments of 1981, Pub.L. No. 97–116, § 4(1), 95 Stat. 1611 (1981). At the time that the immigration judge and BIA decided this case, the five-year limitation period was not in effect, and Parcham would have been disabled from applying for readmission without the Attorney General's permission for life. Thus the grant of voluntary departure confers a

tion hearings are civil rather than criminal proceedings, *Harisiades*, 342 U.S. at 594, 72 S.Ct. at 521, the alien may not invoke the full panoply of safeguards available to the criminal defendant. *E.g., Nai Chang Chen v. INS*, 537 F.2d 566, 568 (1 Cir.1976). Therefore, the immigration judge and BIA could consider the pending charges against Parcham as some evidence that he probably committed the crimes with which he was charged, even though he obviously would have been presumed innocent until proven guilty in any criminal proceeding. But I am inclined to think that principles of due process require more than the mere existence of pending charges to justify denial of voluntary departure under the circumstances of this case, where the INS has offered no evidence corroborative of the charges and Parcham has denied his guilt.[8]

significant benefit, though one of lesser significance since the 1981 amendment.

Voluntary departure is a benefit, not a right; Congress has not required the Attorney General to give all deportable aliens the benefit of voluntary departure, and has explicitly excluded some classes of aliens from eligibility. Yet, the interplay of the Act's various deportation and exclusion provisions demonstrates why it is generally ill-advised to ground the decision to deny voluntary departure on pending charges. Had the decision been stayed pending the outcome of the criminal trial and had Parcham been convicted, a number of provisions of the Act might have accomplished the same result as the denial of voluntary departure based on pending charges. First, Section 244(e) makes ineligible for voluntary departure any person convicted of a crime involving moral turpitude committed within five years of entry into the United States, if sentenced to a prison term of at least one year, or any person who is convicted of two crimes involving moral turpitude at any time after entry whether or not the convictions resulted in a prison sentence, so long as they did not arise from the same scheme of criminal misconduct. 8 U.S.C. §§ 1254(e), 1251(a)(4). Additionally, section 244(e) makes ineligible for voluntary departure people convicted of various enumerated crimes, whether or not they otherwise meet the conditions described above. Moreover, the exclusion provisions of the Act bar the entry of persons who have been convicted of a crime involving moral turpitude. 8 U.S.C. § 1182(a)(9). Finally, before Parcham could have been lawfully readmitted to the United States, he would have had to convince a consular officer to issue him a visa. Assuming that he was attempting to return as a nonimmigrant (Parcham has been in the United States as a nonimmigrant student, not as a lawful permanent resident admitted as an immigrant), the consular officer could have considered Parcham's past immigration history to determine whether to refuse issuance of the visa on the ground that Parcham lacked a good faith intention to leave the United States upon expiration of his visa. The decision of the consular officer is virtually nonreviewable. *See* 1A C. Gordon & H. Rosenfeld, Immigration Law and Procedure § 3.11b (1985).

In light of these statutory provisions, it appears that consideration of pending charges is far more likely to penalize people who are ultimately acquitted than those who are ultimately convicted, since the Act safeguards in a variety of ways against ready readmission of criminals. Because voluntary departure also accords the alien other benefits, which are unaffected by those statutory provisions, most notably greater say regarding one's destination, and because I can imagine circumstances where it would be in the national interest to effect deportation before the completion of criminal proceedings, I cannot say that the practice of weighing pending charges in deciding whether to grant discretionary relief is irrational and contrary to the statutory purpose. But I do believe that under the circumstances presented in this case it is an unwise and unjust policy.

8. The distinction between the presumption of innocence and considerations of due process is nice but real. Were Parcham entitled to a presumption of innocence in the deportation proceeding as well as at trial, the immigration judge would not be permitted to consider the charges at all before verdict was rendered. Parcham, however, is not entitled to the presumption in the deportation proceeding, and therefore the problem is the evidentiary weight to be given to the bare existence of the pending charges. At least under most circumstances where the petitioner for discretionary relief has denied guilt, I think that the mere existence of outstanding charges with no additional corroborative evidence does not amount to substantial evidence supporting the implied finding of fact that he has committed the crimes charged. *See Jarecha v. INS*, 417 F.2d 220, 225 (5 Cir.1969) (factual findings upon which denial of discretionary relief is predicated must meet substantial evidence test); *Wong Wing Hang v. INS*, 360 F.2d 715, 717 (2 Cir.1966) (same).

Needless to say, because Parcham was acquitted, on remand the mere fact that he was tried for arson should have no probative value. That does not, of course, mean that the circumstances that gave rise to the arson charges may not be considered. Although the State of California failed to meet its burden to prove Parcham's guilt beyond a reasonable doubt, it is possible that the evidence developed at trial or available through other testimonial sources on remand

*Cf. United States ex rel. Castro-Louzan v. Zimmerman,* 94 F.Supp. 22, 26 (E.D.Pa. 1950). The cases cited by the majority do not convince me otherwise.[9]

## V.

For these reasons, I would remand for reconsideration without regard to Parcham's nationality, participation in the California demonstration, or political beliefs. Finally, whether or not Parcham's prosecution for arson was properly considered before, it is of no probative value any longer, in light of his subsequent acquittal.

would militate against a grant of voluntary departure.

9. In none of the three cases cited did the INS rely on then-pending charges to prove that petitioner should not receive discretionary relief from deportation. In *Aalund v. Marshall,* 461 F.2d 710 (5 Cir.1972), and *Talavera v. Pederson,* 334 F.2d 52 (6 Cir.1964), there was independent evidence of adultery. In the former case, petitioner admitted to bearing an illegitimate child fathered by another woman's husband, but denied that that act amounted to adultery; in the latter, petitioner conceded that she had committed adultery. The immigration judge denied petitioner discretionary relief in *Gambino v. INS,* 419 F.2d 1355, 1358 (2 Cir.), *cert. denied,* 399 U.S. 905, 90 S.Ct. 2195, 26 L.Ed.2d 559 (1970), because Gambino refused to answer questions put to him by the judge about his prior convictions and his present activities and associations.